In this medical malpractice case, the jury awarded $445,351.00 to the minor plaintiff and $17,500.00 to his mother. The defendants take issue with the judgment entered on these verdicts on the grounds that the damages were excessive and that the plaintiffs were contributorily negligent as a matter of law.
Ronnie Parker injured his foot early on Saturday morning, April 2, 1983, while climbing across a flatcar owned by Seaboard System Railroad. He was taken to St. Margaret's Hospital, where Dr. Stephen Burge treated him in the emergency room. Dr. Burge cleaned, stitched, and bandaged a laceration on the bottom of Ronnie's foot, but took no X-rays. The reports prepared by the firemedic who arrived at the scene of the injury and by the ambulance personnel indicated that the chief complaint was a fracture of the foot. The admitting clerk at the hospital typed on the admission form a statement that he had a possible fracture of the right foot, but a handwritten entry on the form lists the chief complaint as a laceration of the foot.
Dr. Burge sent Ronnie home and told him to keep his foot elevated. Later that day, Ronnie returned to the hospital complaining of continuing pain. His mother, Willie Mae Parker, asked Dr. Burge if he had taken X-rays, and Dr. Burge responded that it was not necessary to take X-rays. The wound was re-dressed, and Ronnie was released with instructions to keep his foot elevated. On Monday, his pain was worse, so his mother called St. Margaret's Hospital. She was told that St. Margaret's was not operating the city's emergency room that day but would again on Tuesday, so she could bring Ronnie then. When she brought Ronnie to the hospital on Tuesday, April 5, he was treated by Dr. Baker, who ordered X-rays, admitted Ronnie to the hospital, and called in Dr. Warner L. Pinchback, Jr., an orthopedic surgeon, for consultation.
Dr. Pinchback diagnosed Ronnie as having compartment syndrome, a swelling of tissues inside the muscle compartments that causes increased pressure on the blood vessels; this increased pressure decreases circulation and tends to cause the muscles to die. Dr. Pinchback diagnosed three fractures from the X-rays. He opened the wound to clean it and removed 100 cc's, or about half a pint, of clotted blood from the wound. On April 7, Dr. Pinchback again cleaned the wound and removed more dead tissue. On April 11, Dr. Pinchback surgically removed Ronnie's big toe. Because Ronnie had lost a significant amount of muscle and skin from his foot, his doctors transferred him to Baptist Medical Center on April 19 for further treatment by Dr. *Page 540 
William E. Noblin, a plastic surgeon. Part of Dr. Noblin's treatment was a cross-leg skin graft, which necessitated Ronnie's immobilization in a body cast for 13 days.
The Parkers filed suit against Seaboard System Railroad, St. Margaret's Hospital, Dr. Burge, and Montgomery Emergency Physicians, P.A. It is acknowledged that Dr. Burge was acting as an agent of Montgomery Emergency Physicians when he treated Ronnie. Seaboard System Railroad and St. Margaret's Hospital entered into pro tanto settlements with the Parkers totalling approximately $206,000.00. The case proceeded to trial against the two remaining defendants, who are the appellants here.
The Parkers presented as an expert witness Dr. Steven J. Davidson, a specialist in emergency medicine from Pennsylvania. Dr. Davidson testified that Dr. Burge fell below the standard of care when he failed to review the reports and take an adequate history, when he failed to order X-rays, and when he closed the wound. There was evidence both from Dr. Davidson and from Dr. Pinchback that the wound continued to bleed after Dr. Burge closed it. Dr. Davidson testified that the fractures themselves would cause swelling and bleeding into the foot, which would lead to compartment syndrome, i.e., increased pressure, loss of circulation, and necrosis of the tissues normally supplied by the blood that was cut off.
Dr. Davidson testified that an X-ray would have shown the fractures and that such compound fractures presented a serious risk of infection and required treatment that would stop the bleeding but allow the wound to drain. He testified that he would have recommended consultation with an orthopedic surgeon and hospitalization, and that if the patient had rejected such a recommendation, he would have applied hemostatic pressure dressings and would have given specific instructions to the patient or, in this case, to the parent about caring for and monitoring the wound. He testified that the most crucial period for the proper care is the first 24 hours. Finally, Dr. Davidson testified that if Dr. Burge had followed standard care for this injury, Ronnie Parker's foot probably would have had a full recovery in approximately six weeks and that "if the wound [had not been] closed, he would not have developed compartment syndrome; and therefore, would not have lost his great toe."
Dr. Morris S. White, the owner of Montgomery Emergency Physicians, P.A., testified that in a case such as Ronnie Parker's he would not have closed the laceration if he were aware of the fractures, that he would have consulted an orthopedic surgeon, and that closing the wound created a risk of compartment syndrome. This and other expert testimony in the case was compatible with Dr. Davidson's conclusion that Dr. Burge did not follow the proper standard of care and that, had he done so, Ronnie probably would have recovered fully in approximately six weeks.
Thus, the jury properly could have found that the surgeries performed by Drs. Pinchback and Noblin, the extensive damage to Ronnie's foot, and the pain and suffering attendant to these injuries and these operations were the proximate result of sub-standard care by Dr. Burge. Such findings would bear heavily on the question of whether the jury awarded excessive damages.
The trial court entered a detailed order denying the defendant's motion for judgment notwithstanding the verdict or, in the alternative, for new trial. Because this order is pertinent to the question of whether the jury awarded excessive damages, we set it forth in full here:
 "This matter came on for consideration on Defendant's Motion for new Trial or Alternatively Judgment Not Withstanding the Verdict. The Court heard the motions which were presented orally before the Court and at that time ordered additional briefs on three points of law which were of concern to the Court. The Court further ordered that the closing arguments be transcribed for review by the Court and for the benefit of counsel. The Court has now reviewed the transcript of closing arguments and has reviewed *Page 541 
the briefs of counsel. At oral argument, the Court found all of the grounds stated in the motion to be without merit except for those on which briefs were requested. The three points which have been briefed will be discussed in this Order in separately numbered sections:
 "1. Whether a 'mistaken view of the evidence' by the jury can form the basis for either a grant of a new trial or a remittitur.
 "In this case the possibility of a mistaken view of the evidence arises from the fact that certain experts were allowed, essentially without objection, to testify as to occupational disability. The testimony of these two witnesses was intended, at least in part, to lay a predicate for a third expert, who is a vocational expert. The case is not a punitive damages case but compensatory damages only are allowable. The medical evidence is uncontradicted that with the use of a prosthetic shoe the plaintiff would suffer little or no occupational disability. This fact was not taken into account by the vocational witness who testified. Further, there was no expert evidence to show that certain percentages testified to by the vocational expert were statistically valid. In short, the testimony of the two experts had little or no relevance or probative value in establishing a basis of an award of compensatory damages. One of the vocational experts had mistakenly reviewed school grades of the plaintiff's brother.
 "All of this is further accentuated by the fact that plaintiff's counsel in closing arguments made an appeal to the jury based on the testimony of the two vocational witnesses, which argument was simply not founded on any statistically or mathematically supportable evidence in the case. All of this occurred, however, without objection. Tactically, defense counsel chose not to object to the testimony of these witnesses but to attempt to rebut. The undersigned Judge used every opportunity presented to attempt to have only legally admissible evidence admitted to the jury. It is the holding of the Court that the fact that the jury may have erred in its factual findings concerning compensatory damages because of a mistaken view of the evidence, cannot form a basis for the Court granting a new trial, since the defendant was given the opportunity to object to evidence and failed to do so, but took his chances with attempts to rebut the evidence. This conclusion is buttressed by the fact that the verdict is a general verdict and since money is fungible, the award could have been based on pain and suffering rather than lost future earnings.
 "2. Whether Plaintiffs, in closing, argued damages in excess of damages allowable in this case.
 "The undersigned trial Judge is intrigued with the possibility that error could have occurred in closing argument by plaintiff's counsel asking for grossly excessive damages. Plaintiff's counsel in this case probably asked for an amount of damages which, if granted by the jury, would have shocked the judicial conscience so as to require a remittitur. Whether such argument was improper argument is not properly presented in this case, however, since there was no objection to the argument.
 "Concerning the question of excessiveness of the verdict in this case, the amount which was awarded by the jury is very clearly an amount greater than the Court would have awarded without a jury, based on the evidence which was presented. In effect, taking into account two pro tanto settlements which occurred prior to the trial, for a total of $204,000 [sic], the plaintiffs have been awarded well over $600,000 for the loss of the large toe and a small portion of plaintiff's foot. The case is a simple negligence case. Applying what this Court understands to be the prevailing rule of law, however, and giving due regard to the weight to be given a jury verdict and the great caution to be exercised in setting aside a jury verdict, the undersigned Judge is unwilling to substitute his judgment for that of the jury in this case. The Court does not find that *Page 542 
the verdict itself, in light of the evidence, is sufficient to show bias, prejudice, mistake or any other error on the part of the jury. Evidence was clear and cogent that the plaintiff suffered tremendously and the court cannot say that the verdict was not supported by the evidence simply because the Court would have come to a different conclusion.
 "3. Whether the trial court's corrective instructions to the jury cured the error by Plaintiffs' attorney who argued facts not in evidence when he made reference to the Defendant's responsibility for the emergency room care on Monday, a day when St. Margaret's had no responsibility for emergency room care.
 "The Court has reviewed the transcript of closing arguments and the curative instructions given and finds that curative instructions were sufficient and that, in fact, all parties agreed that such instructions were sufficient at the time. Accordingly, the Court does not find merit in this contention of defendant.
 "Based on the foregoing discussion, the Court hereby DENIES the Motion for New Trial or Alternatively Judgment Not Withstanding the Verdict."
Defendants do not take issue with the court's conclusion that they failed to preserve any alleged error with regard to the testimony about loss of earning power; they simply argue that the evidence showed that Ronnie had no significant loss of earning power. Nevertheless, there was evidence of some occupational disability. Furthermore, there was substantial evidence of pain and suffering. Defendants argue against the verdict in this respect by reference to Ronnie's loss as being only that of his big toe and a portion of his foot and by mentioning only the suffering of being immobilized two weeks during the skin graft treatment. They point out that his treating physicians, Drs. Pinchback and Noblin, stated that they could not say that Ronnie would have kept his toe if his treatment had been any different. The jury could have found, however, from Dr. Pinchback's testimony that Ronnie might well have kept his toe had Dr. Burge not closed the wound on the first visit.
At any rate, there was credible evidence that Dr. Burge negligently failed to obtain X-rays and thereby diagnose the compound fractures, and that he therefore administered the wrong treatment. There was credible evidence that this improper treatment caused Ronnie to suffer a great deal more than he would have if the proper treatment had been administered, that it necessitated extensive surgical procedures to remedy the resulting damage, and that his recovery was much more protracted and less complete than if he had been given the proper treatment. Under these facts, we agree with the trial court that the verdict, while high, cannot be said to have resulted from bias, passion, prejudice, or other improper motive.
Jury verdicts are presumed correct, especially when the damages are for pain and suffering, and that presumption is strengthened where the trial court denies a motion for new trial. Blue Star Ready Mix v. Cleveland, 473 So.2d 497
(Ala. 1985); Coca-Cola Bottling Co. v. Parker, 451 So.2d 786
(Ala. 1984). Under the facts of this case, the judgment of the trial court on the verdict and on its denial of the motion for new trial is not due to be reversed, nor is a remittitur due to be granted by this Court.
Defendants argue that judgment should have been granted in their favor because plaintiffs were guilty of contributory negligence as a matter of law. Plaintiffs correctly point out that defendants did not make a motion for directed verdict at the close of all the evidence and did not assert contributory negligence as a ground for granting JNOV or new trial. Defendants do not reply to this argument in their reply brief, so nothing is presented to persuade us that plaintiffs are incorrect in saying that this asserted ground for reversal is not presented for our review. Moreover, the only arguments as to contributory negligence with respect to the claim against these defendants, such as the argument that Ronnie failed to fully inform Dr. Burge of the circumstances of the accident and the argument that he and his mother *Page 543 
failed to follow Dr. Burge's instructions for care, present at most fact questions, not evidence of contributory negligence as a matter of law. Therefore, this argument presents no error.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.