535 So.2d 126 (1988)
PINECREST APARTMENTS, LTD.
v.
R.P. McDAVID COMPANY, INC.
87-761.
Supreme Court of Alabama.
October 21, 1988.
William W. Tally, Scottsboro, for appellant.
Gilbert E. Johnston, Jr., and William D. Jones III of Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, for appellee.
BEATTY, Justice.
Appeal by defendant, Pinecrest Apartments, Ltd. ("Pinecrest"), from summary judgment in favor of plaintiff, R.P. McDavid Company, Inc. ("R.P. McDavid"), on plaintiff's claim to enforce a materialman's lien against the defendant. We reverse and remand.
The facts are essentially undisputed. Pinecrest is the owner of an apartment complex at Altoona in Etowah County. The complex was completed in 1986 by Covington & Dutton, Inc., the general contractor.
During construction, Covington & Dutton, Inc., contracted with Valley Plumbing and Electrical Supply, Inc. ("Valley Plumbing"), for Valley Plumbing to furnish certain appliances and related materials that were to be installed by Covington & Dutton, Inc., as construction progressed. Valley Plumbing, in turn, contracted with R.P. McDavid to provide these appliances and materials. In accord with these contracts, the items were furnished by R.P. McDavid to Valley Plumbing and then by Valley Plumbing to Covington & Dutton, Inc., which installed them. The last shipment by R.P. McDavid to Valley Plumbing was made on or about March 28, 1986.
On May 21, 1986, R.P. McDavid notified Pinecrest that it was claiming a lien on the apartments to secure payment of $12,976.00 owed R.P. McDavid by Valley Plumbing for appliances and materials furnished Valley Plumbing and installed in the apartments. At the time of that notice, Pinecrest owed Covington & Dutton, Inc., $80,400 on the construction contract, but Covington & Dutton, Inc., had already paid Valley Plumbing in full. R.P. McDavid followed up its notice with the filing on July 10, 1986, of a verified statement of its lien in the probate judge's office in Etowah County.
Thereafter, on October 24, 1986, R.P. McDavid filed its complaint against Pinecrest and Valley Plumbing for enforcement of its claimed materialman's lien and for judgment against Valley Plumbing. In that complaint, R.P. McDavid alleged that Valley Plumbing "was a subcontractor involved in the construction of said buildings and improvements," and that R.P. McDavid, under contract with Valley Plumbing, *127 had furnished certain appliances and other materials that were installed in the apartments. The complaint was amended to state a separate claim not relevant here.
Pinecrest's answer denied that Valley Plumbing was a subcontractor on the apartment job, denied any contractual relationship with Valley Plumbing or with R.P. McDavid, and denied any indebtedness to R.P. McDavid. Pinecrest also denied receiving the requisite notice to perfect a materialman's lien, and asserted that Valley Plumbing had been fully paid. Finally, Pinecrest asserted that R.P. McDavid's complaint was not timely filed.
Following discovery, both Pinecrest and R.P. McDavid moved for summary judgment on the R.P. McDavid claim for enforcement of its claimed materialman's lien. Upon consideration, the trial court granted R.P. McDavid's motion and denied Pinecrest's motion. This appeal ensued.
The dispositive question is whether R.P. McDavid, in selling appliances to Valley Plumbing, which was not a subcontractor, came within the meaning of Code of 1975, § 35-11-210 et seq., and thus was entitled to a lien on Pinecrest's realty in an amount up to the balance of funds left unpaid by Pinecrest to Covington & Dutton, Inc., at the time notice was given to Pinecrest.
Code of 1975, § 35-11-210, in pertinent part provides:
"Every ..., person, firm or corporation who shall do or perform any work, or labor upon, or ... furnish any material... for any building ... under or by virtue of any contract with the owner or proprietor thereof, or his ... contractor or subcontractor, upon complying with the provisions of this division, shall have a lien therefor on such building or improvements and on the land on which the same is situated, to the extent in ownership of all the right, title and interest therein of the owner or proprietor ...; or, if employees of the contractor or persons furnishing material to him, the lien shall extend only to the amount of any unpaid balance due the contractor by the owner or proprietor, and such employees and materialmen shall also have a lien on such unpaid balance. But if the person, firm or corporation, before furnishing any material, shall notify the owner or his agent in writing that such certain specified material will be furnished by him to the contractor or subcontractor for use in the building or improvements on the land of the owner or proprietor at certain specified prices, unless the owner or proprietor or his agent objects thereto, the furnisher of such material shall have a lien for the full price thereof as specified in the notice to the owner or proprietor without regard to whether or not the amount of the claim for such material so furnished exceeds the unpaid balance due the contractor, unless on the notice herein provided for being given, the owner or proprietor or his agent shall notify such furnisher in writing before the material is used, that he will not be responsible for the price thereof." (Emphasis added.)
By its terms, § 35-11-210 provides for the creation of two types of liens, one for the full price of the materials furnished and another for the amount of the unpaid balance due the contractor from the owner. Because the statute is in derogation of the common law, its requirements must be complied with strictly. Abell-Howe Co. v. Industrial Development Board of City of Irondale, 392 So.2d 221 (Ala.Civ.App. 1980); McClesky v. Finney, 272 Ala. 194, 130 So. 2d 183 (1961).
The notice provision relied upon by the appellee, R.P. McDavid, recites:
"Every person, except the original contractor, who may wish to avail himself of the provisions of this division, shall before filing his statement in the office of the judge of probate, give notice in writing to the owner or proprietor, or his agent, that he claims a lien on such building or improvement, setting forth the amount thereof, for what, and from whom it is owing; and after such notice, any unpaid balance in the hands of the owner or proprietor shall be held subject to such lien...."
Section 35-11-218.
Relying upon this Court's decisions in Noland Co. v. Southern Development Co., *128 445 So.2d 266 (Ala.1984), and Crane Co. v. Sheraton Apartments, Inc., 257 Ala. 332, 58 So.2d 614 (1952), R.P. McDavid argues that it has complied with the materialman's lien statute and thus has a valid lien. We respectfully disagree.
In Noland Co., the property owner contracted with a general contractor for construction of a building. The general contractor then contracted with a plumbing subcontractor. Noland Company sold plumbing supplies to the plumbing subcontractor, and, when this subcontractor failed to pay Noland Company, the latter asserted a lien against the owner's property up to the amount of the unpaid balance due from the owner to the contractor. Pursuant to Code of 1975, § 35-11-210, Noland Company had not given the requisite notice to the owner before supplying the materials. This Court held, nevertheless, that Noland Company was entitled to its lien under the first notice provisions of that section, citing Crane Co., supra.
Crane Co. involved substantially the same facts as Noland Co. The owner contracted with a general contractor for construction of an apartment building, and the general contractor contracted with a subcontractor to install materials that the subcontractor purchased from a supplier that, upon being unpaid, claimed a lien under the predecessors of Code of 1975, §§ 35-11-210 and -218. Some of the language used in Crane Co. not only explains why this Court upheld the plaintiff's lien in that case but also reveals that this Court applied the language of the statute strictly, viz.:
"The statute [now § 35-11-210] uses the terms contractor and subcontractor in this connection. In other words, although the subcontractor is a contractor and the only one who deals with his laborers and materialmen, he remains a subcontractor under this lien law. The laborers and materialmen of the subcontractor have a lien to some extent on the building and land without doubt. The laborers and materialmen of the contractor are given a lien not exceeding the amount of any unpaid balance due the contractor by the owner, which lien is also upon such unpaid balance. So that, according to the literal language of the first clause of the statute, the lien for labor and material owing solely by the subcontractor shall extend only to the building and land. If notice is given, as provided in the last clause, the lien of the materialmen of the contractor or subcontractor (not laborer) shall be for the full amount thereof, regardless of the amount owing by the owner to the contractor when the lien is asserted, unless the owner takes a further step." (Emphasis added in Crane Co.)
In both of those cases, the legal power to impose the lien had been given by statute to firms that had performed some portion of the contract of the general contractor, i.e., to subcontractors. Indeed, those lienholders were subcontractors in the common understanding of the term, as defined in Black's Law Dictionary, (5th ed. 1979) at 1277:
"Subcontractor. One who takes portion of a contract from principal contractor or another subcontractor. Hardware Mut. Casualty Co. v. Hilderbrandt, C.C. A.Okl., 119 F.2d 291, 297, 299 [(10th Cir.1940) ]. One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance. One who takes from the principal or prime contractor a specific part of the work undertaken by the principal contractor. Royal Indemnity Co. v. Kenny Constr. Co., C.A.Ill., 528 F.2d 184, 191 [(7th Cir.1975)]."
We are convinced, moreover, that under the usage of the building trades themselves this is the accepted meaning. See Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). This definition was adopted in Sparks Construction, Inc. v. Newman Brothers, Inc., 51 Ala.App. 690, 693, 288 So.2d 749 (1974), which quoted from Theisen v. Los Angeles County, 54 Cal.2d 170, 183, 5 Cal.Rptr. 161, 169, 352 P.2d 529, 537 (1960):
"`[W]e conclude that one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of *129 the general contract in accord with the plans and specifications by which the prime contractor is bound has "charge of the construction" of that part of the work of improvement ... and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building....'" (Citations omitted.)
In his affidavit filed on behalf of Pinecrest's motion for summary judgment, Phillip Dutton, president of Covington & Dutton, Inc., stated:
"Covington & Dutton, Inc., did not have a subcontract with Valley Plumbing and Electrical Supply, but simply purchased the appliances from that firm as needed. In that respect, Valley Plumbing and Electrical Supply was simply a supplier of articles used in the construction of the apartments, rather than being a subcontractor. No responsibilities or duties of Covington & Dutton, Inc., under the construction contract were delegated or assigned to Valley Plumbing and Electrical Supply, Inc., and no part or portion of the contract was turned over for execution to Valley Plumbing and Electrical Supply, Inc.
"Valley Plumbing and Electrical Supply, Inc. was paid in full for all articles purchased in connection with Pinecrest Apartments, and such payments were made long before Pinecrest Apartments, Ltd., was notified on May 21, 1986 that the R.P. McDavid Company was claiming a lien on the apartment property.
"Prior to accepting delivery of the appliances from Valley Plumbing and Electrical Supply for installation in the apartment complex, Covington & Dutton, Inc. received no advance notice whatever that the R.P. McDavid Company was supplying appliances to Valley Plumbing and Electrical Supply, Inc., or that the R.P. McDavid Company was or might be in a position to claim a materialman's lien. Covington & Dutton, Inc. had no knowledge at all where the appliances sold by Valley Plumbing and Electrical Supply were purchased, and had no reason to know or to inquire where such appliances were purchased by Valley Plumbing and Electrical Supply, Inc. Further, Covington & Dutton, Inc. has never had any contracts, dealings, or association whatever with the R.P. McDavid Company."
No counter affidavits or other evidence was adduced by R.P. McDavid to rebut this evidence of Pinecrest so as to make an issue of fact regarding the status of R.P. McDavid, or upon the issue of notice or regarding the failure of R.P. McDavid to give the notice statutorily required. In short, R.P. McDavid had no contract with the owner of the building or with the contractor. R.P. McDavid did have a contract with Valley Plumbing, but Valley Plumbing was not a subcontractor. Thus, it appears that R.P. McDavid, rather than occupying the position of a furnisher of supplies to a subcontractor, as the statute clearly requires, was instead in the position of a supplier of materials to another supplier. By its plain terms, § 35-11-210 does not extend the protection of a materialman's lien to such a party; hence, R.P. McDavid's remedy, if any, lies elsewhere. Moreover, R.P. McDavid did not follow the explicit statutory requirement for giving notice to the owner before furnishing materials to Valley Plumbing.
For these reasons, it was error for the trial court to refuse Pinecrest's motion for a summary judgment and to grant R.P. McDavid's like motion.
Let the judgment be reversed and the cause remanded for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX and ALMON, JJ., concur.
HOUSTON, J., concurs in the result.
HOUSTON, Justice (concurring in the result).
I think Code 1975, § 35-11-210 would extend protection to R.P. McDavid, if it had notified Pinecrest, in writing, that it was furnishing material to be used in the construction of the apartments, before the material was furnished, regardless of the designation of the entity (materialman, subcontractor, *130 or contractor) to whom the material was supplied. This would secure to the materialman a just reward for his material, Mazel v. Bain, 272 Ala. 640, 133 So.2d 44 (1961), or a return of the unused material ("unless on the notice herein provided for being given the owner ... shall notify such furnisher in writing before the material is used, that he will not be responsible for the price thereof," Code 1975, § 35-11-210).