833 So.2d 18 (2002)
H.R.H. METALS, INC.
v.
Carl MILLER, by and through his guardian and conservator, Virginia MILLER; and Virginia Miller, individually.
1002015.
Supreme Court of Alabama.
April 19, 2002.
*21 Warren B. Lightfoot, M. Christian King, and Ivan B. Cooper of Lightfoot, Franklin & White, L.L.C., Birmingham; and William T. Mills II and Keith J. Pflaum of Porterfield, Harper & Mills, P.A., Montgomery, for appellant.
David H. Marsh, Jeffrey C. Rickard, and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for appellee.
WOODALL, Justice.
This case arises out of a serious on-the-job injury suffered by Carl Miller. After a jury trial, the trial court entered a judgment for Carl Miller, against defendant H.R.H. Metals, Inc. ("H.R.H."), in the amount of $4,562,457.19. The trial court also entered a judgment for Virginia Miller, Carl's wife, in the amount of $2,125,000 on her loss-of-consortium claim. After the trial court denied its postjudgment motion, H.R.H. appealed. We reverse and remand.

I.
H.R.H. is a dealer in scrap metal. In August 1997, H.R.H. entered into an agreement with Vulcan Materials Company ("Vulcan"), "whereby H.R.H. agreed to purchase and remove the three buildings which made up Vulcan's Agri-Lime Plant located at the Dolcito Quarry." Brief of Appellant, at 11. H.R.H. agreed to pay Vulcan for the steel H.R.H. removed, and Vulcan agreed to pay H.R.H. to remove other materials, including asbestos.
H.R.H. signed a separate agreement with Vulcan, entitled "Vulcan Materials Company Contractor/Vendor Covenants, Representations and Warranties." That agreement contained the following provision:
"5. Safety and Health. [H.R.H.] represents and warrants that its employees, subcontractors, agents and agents' employees who will be granted access to Vulcan's premises have received all training required by the Mine Safety and Health Administration, Occupational Safety and Health Administration or their successors and by any state agency, including but not limited to comprehensive miner training and task training. [H.R.H.] further represents and warrants that all such employees, subcontractors, agents and agents' employees have received satisfactory hazard training appropriate to the Vulcan facility or facilities they will be entering. [H.R.H.] covenants to follow Vulcan's safety rules and to maintain its own safety and health program for its employees, subcontractors and agents sufficient to prevent injury or illness to such persons resulting from their presence on the Vulcan premises...."
H.R.H. reached an agreement with a subcontractor, Ronnie Bridges d/b/a Southern Dismantling, for the demolition and removal of two of the buildings H.R.H. had agreed to remove from Vulcan's plant. This case involves the third building, which the parties refer to as the "bag house."
H.R.H. sold the bag house to Miller Machine Company. "Miller Machine purchased the two story high building made of steel beams, girders and siding with a corrugated steel and fiberglass roof `AS IS, WHERE IS, MILLER TO TAKE DOWN AND REMOVE.'" Brief of Appellant, at 7. Carl Miller was employed by Miller Machine Company. While working with a co-employee to dismantle the bag house, Miller stepped through a skylight, fell approximately 20 feet to a concrete floor, and suffered disabling injuries.

II.
On October 13, 1998, Carl Miller, by and through his guardian and conservator, Virginia *22 Miller, and Virginia Miller, individually, sued H.R.H. and others.[1] The complaint alleged negligence and wantonness claims against H.R.H.:
"2. ... H.R.H. [was] the ... general contractor ... of the site involved in [Carl Miller's] injury and/or of the building being dismantled. As such, [H.R.H. was] responsible for the safety of workers on this dismantling project. [H.R.H.] negligently or wantonly performed [its] duties in [its] aforesaid [capacity] at the dismantling site and as a direct consequence of said negligent or wanton conduct, [Carl Miller] was caused to be injured and damaged as herein described."
The complaint also contained a breach-of-contract claim:
"4. Prior to the date of [Carl Miller's] injury, [H.R.H.] entered into written or oral contracts concerning the building dismantling project involved in [his] injury. Said contract or contracts contained provisions which required [H.R.H.] to provide safety equipment and/or other safety measures for workers at the site, including plaintiff, Carl Miller. The plaintiff, Carl Miller, was a third-party beneficiary to the aforesaid contracts, and was injured and damaged as a direct result of a breach of contract by [H.R.H.]."
Carl Miller claimed compensatory and punitive damages. Virginia Miller asserted a loss-of-consortium claim, also seeking compensatory and punitive damages.
H.R.H. filed its answer on January 14, 1999. H.R.H. generally denied the allegations of the complaint and asserted the affirmative defenses of contributory negligence and assumption of the risk.
Much of the pretrial procedural history of this case is not relevant to this appeal. However, H.R.H. does contend that the trial court erred in its rulings on a motion for partial summary judgment filed by the Millers and on a motion for partial summary judgment filed by H.R.H.
The Millers filed a motion for partial summary judgment, seeking a "finding [as a matter of law] that Miller Machine Company, the employer of Plaintiff, Carl Miller, was a `subcontractor' of the Defendant, H.R.H. Metals, Inc., at the time the incident made the basis of this lawsuit occurred." H.R.H. filed a motion for "a partial summary judgment in its favor with respect to that count of the Complaint filed by Plaintiffs Carl and Virginia Miller, which seeks to recover from H.R.H. under a `breach of contract/third-party beneficiary' theory." The trial court disposed of those motions in a "partial summary judgment," which provided, in pertinent part:
"This cause came on to be heard on the motion for partial summary judgment filed by the plaintiffs, Carl Miller and Virginia Miller, and on the motion for partial summary judgment filed by the defendant, H.R.H. Metals, Inc....
"The undisputed facts show that the plaintiff, Carl Miller, an employee of Miller Machine Company, fell through a skylight while he was disassembling a metal building located at the Vulcan Material Company's Dolcito Quarry in Tarrant, Jefferson County, Alabama on August 29, 1997. The plaintiff suffered severe head injuries which have caused *23 him to be totally and permanently disabled. The plaintiff contends that H.R.H. is liable for his injuries and other damages.
"In their motion, the plaintiffs ask the court to determine as a matter of law that the plaintiff's employer, Miller Machine Company, was a `subcontractor' of the defendant, H.R.H., at the time of the plaintiff's injury. In the defendant's motion, it asked the court to determine as a matter of law that the plaintiff is not a `third party beneficiary' of the contract between H.R.H. and Vulcan.
"Essentially, both parties are asking the court to determine as a matter of law what legal duty, if any, H.R.H. owed the plaintiff at the time of his injury. The court agrees that there is no genuine issue of material fact as to this issue and that it is a question of law for the court's determination.
"Based upon the evidentiary submissions, the pleadings and arguments of counsel, the court concludes that the plaintiff is entitled to the relief sought in his motion.
"The court concludes as a matter of law, and declares it to be the law of this case, that the plaintiff's employer, Miller [Machine] Company, was a subcontractor under the agreement(s) between Vulcan and H.R.H. and that the plaintiff, Carl Miller, was a third-party beneficiary of that contract(s). Therefore, the defendant owed plaintiff the legal duty it agreed to assume to the employees of subcontractors under the terms of the agreements between Vulcan and H.R.H."
The case against H.R.H. proceeded to a jury trial. At the conclusion of the plaintiffs' case, H.R.H. moved for a judgment as a matter of law ("JML"); the trial court denied the motion. H.R.H. again moved for a JML at the conclusion of all of the evidence; the trial court denied that motion also and submitted the case to the jury, which returned verdicts awarding Carl Miller $4,562,457.19 and Virginia Miller $2,125,000. The verdicts were for compensatory damages only.
After the trial court entered a judgment on the jury verdicts, H.R.H. filed a motion for a JML or, in the alternative, for a new trial or a remittitur. The trial court denied that postjudgment motion, and H.R.H. appealed.

III.
H.R.H. argues that the trial court erred in concluding, as a matter of law, that Carl Miller's employer, Miller Machine Company, was a subcontractor under the terms of the agreement between H.R.H. and Vulcan. We find that argument to be without merit.
Stated simply, a subcontractor is one who "perform[s] some portion of the contract of the general contractor." Pinecrest Apartments, Ltd. v. R.P. McDavid Co., 535 So.2d 126, 128 (Ala.1988). In Pinecrest Apartments, Ltd., this Court approved the following definition as the "common understanding" of the term "subcontractor":
"`Subcontractor. One who takes portion of a contract from principal contractor or another subcontractor. Hardware Mut. Casualty Co. v. Hilderbrandt, C.C.A. Okl., 119 F.2d 291, 297, 299 [(10th Cir.1940)]. One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance. One who takes from the principal or prime contractor a specific part of the work undertaken by the principal contractor. Royal Indemnity Co. v. Kenny Constr. Co., C.A. Ill., 528 F.2d 184, 191 [(7th Cir.1975), cert. *24 denied sub nom. City of Chicago v. Kenny Constr. Co., 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976)].'"
535 So.2d at 128, quoting Black's Law Dictionary 1277 (5th ed.1979). It is clear that Miller Machine falls within this definition.
H.R.H. admits that it "agreed to purchase and remove the three buildings which made up Vulcan's Agri-Lime Plant located at the Dolcito Quarry." Brief of Appellant, at 11. One of those three buildings was the bag house, which H.R.H. sold to Miller Machine and which Miller Machine agreed "to take down and remove." Where Miller Machine undertook from H.R.H. a specific portion of the work undertaken by H.R.H. in its agreement with Vulcan, Miller Machine was a subcontractor as that term is commonly understood. Although the transaction between H.R.H. and Miller Machine bore an element of a sale, Miller Machine was undertaking to remove the bag house, one of the buildings H.R.H. was contractually bound to remove from Vulcan's premises. See Nationwide Mut. Ins. Co. v. Davis, 146 Ga.App. 68, 245 S.E.2d 322 (1978).

IV.
H.R.H. argues that the trial court erred in holding, as a matter of law, that Carl Miller was a third-party beneficiary of the contract between H.R.H. and Vulcan, and that, therefore, H.R.H. owed Miller a duty with regard to on-the-job safety. We find that argument to be without merit.
The controlling principles concerning the proof of third-party-beneficiary claims are well established.
"`[I]t has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to his incidental, benefit.' Mills v. Welk, 470 So.2d 1226, 1228 (Ala.1985). `To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached.' Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc. 512 So.2d 99, 101-02 (Ala.1987)."
McGowan v. Chrysler Corp. 631 So.2d 842, 848 (Ala.1993).
These third-party-beneficiary principles focus upon the intent of the contracting parties. In determining the parties' intent, we must first look to the contract itself, because, while "[t]he intention of the parties controls in construing a written contract," "the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous." Loerch v. National Bank of Commerce of Birmingham, 624 So.2d 552, 553 (Ala.1993). It is only where a contract provision is found to be ambiguous that it may become necessary to consider the surrounding circumstances and the construction the parties gave the language in order to determine the intent of the contracting parties. Mann v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150 (Ala.1999). The question whether a contract is ambiguous is a legal question for the trial court. Id.
The trial court obviously concluded that the contract between Vulcan and H.R.H. was unambiguous and that the contract reflected those parties' clear intention to bestow a direct benefit upon Carl Miller, as an employee of a subcontractor. Otherwise, the trial court could not have concluded, as a matter of law, that Carl Miller was a third-party beneficiary of that contract, *25 to whom H.R.H. owed "the legal duty it agreed to assume to the employees of subcontractors under the terms of the agreements between Vulcan and H.R.H." The trial court did not err in reaching those conclusions.
Paragraph 5 of the agreement between Vulcan and H.R.H. is not ambiguous. It clearly required H.R.H. to ensure that its subcontractors received all necessary health and safety training. H.R.H. specifically agreed "to follow Vulcan's safety rules and to maintain its own safety and health program for its employees, subcontractors and agents sufficient to prevent injury or illness to such persons resulting from their presence on the Vulcan premises." (Emphasis added.) The emphasized language reflects an intention on the part of the contracting parties to bestow a direct benefit upon Carl Miller, as an employee of Miller Machine, a subcontractor.
This is not the first time this Court has dealt with a contractor's duties under a contract provision providing for the safety of project workers. In Kingsberry Homes Corp. v. Ralston, 285 Ala. 600, 605, 235 So.2d 371, 375 (1970), this Court reviewed its prior holdings:
"We held in Blount Brothers Construction Company v. Rose, 274 Ala. 429, 437, 149 So.2d 821 (1962), that under the provisions of a prime contractor's contract with the government to furnish safety devices for the project, such provisions enure to, and are made for, the benefit of employees of sub-contractors on the project. Such contract, we said, `imposed the duty on appellant [the contractor] to provide a reasonably safe place for Mr. Rose [employee of the sub-contractor] and his fellow workers to work on this project. Tennessee Coal, Iron and R. Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459; Evans v. Patterson, 269 Ala. 250, 112 So.2d 194.'
"Both in Blount Brothers Construction Company v. Rose, supra, and in Tennessee Coal, Iron and R. Co. v. Sizemore, supra, the contract provisions provided for the safety of employees. We said, in Tennessee Coal, Iron & R. Co. v. Sizemore, supra:
"`Under such circumstances, the injured employee, who is a party to the contract or one for whose direct benefit it was made, may sue for its breach in assumpsit, or may sue in tort for negligence in failing to perform a duty imposed by law. He has an election in that respect. (Citations omitted.)'"
Our holding today is consistent with, and is required by, those precedents.

V.
H.R.H. argues that the trial court erred in denying its motion for a JML on the negligence claim, because, it insists, Carl Miller was contributorily negligent as a matter of law. However, we have concluded that this argument was not preserved for appeal and, therefore, is not before us for review.
At the close of the plaintiffs' evidence, counsel for H.R.H. orally moved for a JML, stating, in pertinent part:
"[W]e would move for a [JML] with regard to the negligence count, saying that the plaintiff has failed to meet his burden of proof with regard to each and every element of the negligence claim. And we'd further assert that, as a matter of law, the facts in this case establish that the plaintiff was contributorily negligent."
In order to preserve for appeal the argument that Miller was contributorily negligent as a matter of law, H.R.H. was required to renew its motion for a JML on *26 that ground at the conclusion of all of the evidence. Burge v. Parker, 510 So.2d 538 (Ala.1987); Denton v. Foley Athletic Club, 578 So.2d 1314 (Ala.Civ.App.1990).
Counsel for H.R.H. did not refer to the contributory-negligence argument when he renewed the motion for a JML at the conclusion of all of the evidence. Instead, with regard to the negligence claim, counsel stated: "[W]e move for a [JML] as to the negligence count on the basis that the plaintiff has failed to carry [his] burden of proof with the evidence submitted." The motion for a JML on that ground was not sufficient to preserve for appeal the argument that Miller was contributorily negligent as a matter of law.

VI.
H.R.H. argues that the trial court's instruction to the jury on the defense of contributory negligence was erroneous. We have concluded that the trial court erred in instructing the jury on the defense of contributory negligence and that its error requires the reversal of its judgment.
In defining contributory negligence, the trial court initially stated:
"Now, in addition to their plea of not guilty, the defendant says that Mr. Miller was guilty of contributory negligence, and let me define that for you. I've told you what negligence is. It's failure to act as a reasonably prudent person would have acted under the same or [similar] circumstances. Well, it's the same thing on the part of the plaintiff. Contributory negligence simply means that the plaintiff himself was negligent and that his negligence proximately or directly contributed to his own injuries. The plaintiff has the burden of proof initially of showing negligence and proximate cause. But contributory negligence is an affirmative defense, and the defendant has the burden of proving that defense to your reasonable satisfaction."
H.R.H. does not allege any error in this introductory portion of the instruction on the contributory-negligence defense. Obviously, to that point, the charge was neither misleading nor erroneous. See Hicks v. Vulcan Eng'g Co., 749 So.2d 417, 424-25 (Ala.1999); American Furniture Galleries v. McWane, Inc., 477 So.2d 369 (Ala.1985). However, the trial court then proceeded to instruct the jury on what it described as "the three elements essential for [the jury] to find contributory negligence in cases of this kind":
"Now, the three elements essential for you to find contributory negligence in cases of this kind are that the party chargedthat is the plaintiffwith contributory negligence had knowledge of the existence of the dangerous condition and, 2) with the appreciation of such danger, 3) failed to exercise reasonable care for his own safety by putting himself in the way of such known danger. So you must find, in order to find Mr. Miller guilty of contributory negligence which would bar his recovery under the negligence count, you must find that he put himself in the way of danger, and you must also find that he appreciated the danger he confronted. You must be reasonably satisfied that Mr. Miller's appreciation of the danger was a conscious appreciation of that danger at the moment that the incident occurred."
(Emphasis added.)
H.R.H. argues that the trial court erred by "engraft[ing] the conscious appreciation element of assumption of the risk into its contributory negligence charge." Brief of Appellant, at 25. We agree.
As this Court has recently stated, the affirmative defense of assumption *27 of the risk is a form of contributory negligence that involves the plaintiff's actual appreciation of a known risk.
"The affirmative defense of assumption of the risk requires that the defendant prove (1) that the plaintiff had knowledge of, and an appreciation of, the danger the plaintiff faced; and (2) that the plaintiff voluntarily consented to bear the risk posed by that danger. Gulf Shores Marine Indus., Inc. v. Eastburn, 719 So.2d 238, 240 (Ala.Civ.App. 1998). Assumption of the risk is described as `a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk.' Cooper v. Bishop Freeman Co., 495 So.2d 559, 563 (Ala.1986), overruled on other grounds, Burlington Northern R.R. v. Whitt, 575 So.2d 1011 (Ala.1990). This Court has held that `[a]ssumption of the risk proceeds from the injured person's actual awareness of the risk.' McIsaac v. Monte Carlo Club, Inc., 587 So.2d 320, 324 (Ala.1991) (emphasis added)."
Ex parte Potmesil, 785 So.2d 340, 343 (Ala.2000).
With regard to assumption of the risk, "the plaintiff's state of mind is determined by [a] subjective standard." McIsaac v. Monte Carlo Club, Inc., 587 So.2d 320, 324 (Ala.1991). Here, the trial court's charge clearly engrafted a subjective standard (conscious appreciation) onto the contributory-negligence defense. In doing so, it erred, because contributory negligence involves an objective standard. Id.
Although contributory negligence may be predicated upon a finding of assumption of the risk, "it has long been recognized that contributory negligence may also be predicated upon the failure to appreciate the danger when there is a reasonable opportunity to do so under the circumstances." Alabama Power Co. v. Mosley, 294 Ala. 394, 398, 318 So.2d 260, 263 (1975)(emphasis added). That principle was reaffirmed in Sprouse v. Belcher Oil Co., 577 So.2d, 443, 444 (Ala.1991):
"[C]ontributory negligence, while requiring proof of both knowledge and appreciation of the danger, does not require proof of a voluntary affirmative exposure to the danger [as does assumption of the risk]; rather, it merely requires proof that the plaintiff failed to exercise reasonable care.

"`... [C]ontributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be.... [Contributory negligence involves] risks which [the plaintiff] merely might have discovered by the exercise of ordinary care.'
"Koshorek v. Pennsylvania R.R., 318 F.2d 364 (3d Cir.1963)."
(Emphasis added.)
The Millers contend that the "conscious-appreciation" charge "is a correct statement of Alabama law, as it applies to these facts." Brief of Appellees, at 57. Further, they tell us that they requested that the charge be given and that it "was drawn from identical language" contained in Hicks v. Commercial Union Insurance Co., 652 So.2d 211, 219 (Ala.1994). Brief of Appellees, at 57. They claim that this Court, in Hicks, "held that, for a plaintiff to be deemed to have been contributorily negligent, it must be found that he put himself in danger's way, that he appreciated the danger confronted and, `[m]oreover, it must be demonstrated that the plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident *28 occurred.' 652 So.2d at 219 (citations omitted)." Brief of Appellees, at 57. However, the Millers misstate the holding in Hicks, and obviously led the trial court into error with their requested charge.
In Hicks, this Court was merely stating the well-established "standard for determining whether a person was contributorily negligent as a matter of law." 652 So.2d at 219. There is no merit to the Millers' contention that this Court in Hicks was defining the elements of contributory negligence, one of which is not, under the controlling precedents, a conscious appreciation of the danger.[2]
"A party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis of the granting of a new trial." Nunn v. Whitworth, 545 So.2d 766, 767 (Ala.1989). However, "[r]eversal is warranted only when the error is considered to be prejudicial." King v. W.A. Brown & Sons, Inc., 585 So.2d 10, 12 (Ala.1991). The Millers argue that the contributory-negligence charge, taken as a whole, was neither misleading nor prejudicial. Their argument is without merit. Indeed, nothing in the jury instruction contradicts or clarifies the trial court's instruction that the jury "must be reasonably satisfied that Mr. Miller's appreciation of the danger was a conscious appreciation of that danger at the moment that the incident occurred." That error obviously prejudiced H.R.H. and entitles it to a new trial.

VII.
H.R.H. raises other procedural and evidentiary issues on appeal. However, because we hold that H.R.H. is entitled to a new trial, it is not necessary for us to address those other issues. For the reasons previously stated, the judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
"Oh, don't let me commence!" (Again.)[3]
Contributory negligence is a common-law dinosaur. However, attempts to abolish it in Alabama and adopt comparative negligence in its place have failed.[4] Although the doctrine of contributory negligence is pro-defendant,[5] there are many *29 pro-plaintiff legal concepts, such as joint and several liability, that would have to be changed if Alabama adopted comparative negligence.
I appreciate, but regret, the confusion that has developed around this doctrine of contributory negligence, which has long since been replaced by the legislature or the judiciary in other states. In my opinion, the majority opinion accurately expresses the current state of the law.
NOTES
[1] The additional defendants were Vulcan and Ronnie Bridges d/b/a Southern Dismantling. The Millers ultimately dismissed their claims against Vulcan. On August 4, 2000, a jury returned a verdict in favor of Ronnie Bridges d/b/a Southern Dismantling; that same jury was unable to reach a verdict with regard to the Millers' claims against H.R.H., and a second trial was held as to those claims. The Millers have not appealed from the judgment in favor of Bridges.
[2] The Millers also rely upon Smith v. U.S. Construction, 602 So.2d 349 (Ala.1992). However, like Hicks, Smith simply deals with the standard for determining whether a person was contributorily negligent as a matter of law.
[3] Truman Capote, Music for Chameleons 186 (Random House 1980). See Bassie v. Obstetrics & Gynecology Assocs. of Northwest Alabama, P.C., 828 So.2d 280, 285 (Ala.2002) (Houston, J., concurring specially).
[4] See Golden v. McCurry, 392 So.2d 815 (Ala. 1980); Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371, 381 n. 1 (Ala.1989), "This Court might be willing to again entertain, in an appropriate case, the idea of adopting the doctrine of comparative negligence." This footnote resulted in a challenge to the doctrine of contributory negligence. Williams v. Delta Int'l Mach. Corp., 619 So.2d 1330, 1333-34 (Ala.1993) (Houston, J., concurring specially).
[5] Since I have been a Justice on this Court, I have served as a juror in a personal-injury and wrongful-death case arising out of a truck crashing into some equipment on a state highway. The driver of the truck, a plaintiff in the action, was injured, and his passenger, whose estate was a plaintiff, was killed in the accident. I was elected foreperson of the jury, and I agreed to serve with the understanding that I would not express my opinion until all of the other jurors expressed their opinions. The jury, without concern for the initial legal liability of the defendant, found that the injured plaintiff and the decedent had been contributorily negligent, and it was ready to return a verdict for the defendant. I had to remind the jury that the only evidence of contributory negligence was the failure to keep an adequate lookout, and the undisputed evidence showed that the deceased passenger was blind.