This is an arbitration case. Edward D. Jones Co., LP, and its agent, Robert Decker, appeal from the denial of their motion to compel Tranquilino Ryan Ventura to arbitrate his claims against them. Morgan Stanley Dean Witter Co. and its agent, Hunter S. Bowen, appeal separately from the same order, in which the trial court denied their motion to compel Ventura to arbitrate his claims against them. We reverse.
 Facts
When Ventura was 14 years old, he received more than $500,000 in cash as a result of a wrongful-death action filed after his father was killed. A trust estate, funded with those moneys, was established on Ventura's behalf. Ventura's mother, Patricia Dutton, applied for and, on December 23, 1996, was awarded letters of guardianship and conservatorship of this estate from the Probate Court of Marshall County. She was represented by attorney Billie B. Line, Jr. The probate court ordered Dutton to post a bond in an amount of $620,000 and, as set forth in the letters of guardianship and conservatorship, Dutton was authorized and directed to exercise *Page 1037 
"[a]ll powers and duties conferred under Alabama Code [1975, §] 26-2A-152."
Dutton posted a $500,000 fiduciary bond issued by The Hartford Fire Insurance Company.[1] Using funds from Ventura's trust estate, Dutton opened two brokerage accounts — one with Edward D. Jones Co., LP, and another with Morgan Stanley Dean Witter 
Co. Robert Decker acted as the agent for Edward Jones and opened a "Daily Passport Cash Trust" account for Dutton, as "custodian" of the account. O. Daniel MacCartney, acting as the agent for Morgan Stanley opened an "active assets" investment account for Dutton; MacCartney later died and Hunter S. Bowen took over the management of the account.
When Ventura reached the age of majority, Ventura and Dutton filed notice with the Probate Court of Marshall County of a final settlement of the conservatorship of Ventura's trust estate. On July 22, 2002, the probate court issued an order of final settlement of the conservatorship. In December 2002, Ventura learned that the estate had no remaining liquid assets.
On January 23, 2003, on its own motion, the probate court set aside the July 22, 2002, final-settlement order, finding possible deficiencies in the conservatorship and possible deficiencies relating to the settlement of the conservatorship. Ventura then petitioned the probate court for a hearing. He asserted that he had signed the notice of settlement of the conservatorship in reliance on statements made by his mother's attorney that the assets of the estate would be turned over to him when he returned to Alabama from school in Chicago. He claimed that when he returned home from school in December 2002, however, he learned that the trust estate had no liquid assets. Ventura claimed that during the conservatorship neither Dutton nor anyone else had given him a report regarding the condition of the trust estate, and that he had been unable to obtain information regarding the manner in which the liquid assets of the trust estate had been depleted. He asserted a claim against the surety bond filed by Dutton with the court.
The probate court set the matter for a hearing in August 2003. All parties to the conservatorship — Ventura, Dutton and her attorney, and Hartford, the surety — were notified of the hearing. The probate court directed Dutton to produce all appropriate accounting materials relating to the trust estate and to call any witnesses necessary to testify regarding the assets and expenditures of the estate during her conservatorship. The probate court held the hearing as scheduled. Dutton and her accountant appeared at this hearing; Hartford did not appear. Ore tenus evidence was presented. The record contains no transcript of this hearing.
On October 14, 2003, the probate court issued its "Final Decree and Judgment." In that final order, the probate court noted that at the hearing Dutton's expert witness, an accountant, established through his testimony that "other than the mentioned real estate investment, absolutely no legally permissible investment of [Ventura's] estate had been made by the Conservator." The probate court also stated in its final order that "[a]ll parties agreed to the Court entering a final order in the matter without further proceedings based upon the Guardian/Conservator's, Patricia Dutton, violation of her fiduciary and legal duties to the ward, her son, Ryan Ventura, by failing to properly account for the funds *Page 1038 
held in trust." The probate court entered a judgment against Dutton in the amount of $500,000 plus interest from the date of the establishment of the conservatorship, awarded Ventura attorney fees, and imposed costs against Dutton.[2]
On December 1, 2003, Ventura filed his complaint in Marshall Circuit Court. Among other defendants, Ventura named Edward D. Jones Co., LP; its agent, Robert Decker; Morgan Stanley Dean Witter Co.; and its agent, Hunter S. Bowen (sometimes hereinafter collectively referred to as the "brokerage defendants").[3] Against the brokerage defendants, Ventura alleged a breach of a fiduciary duty, alleging that the brokerage defendants were aware of the trust nature of the funds invested with them and that, as a result, each became a trustee (or conservator) in invitum. Ventura alleged that each of the brokerage defendants had participated in Dutton's breach of her fiduciary duties. Ventura also alleged that the brokerage defendants were guilty of fraud and/or suppression for inducing Dutton to place the funds of the trust estate with them by making false statements and promises with regard to their knowledge of the requirements of the law regarding investing Ventura's trust estate.
On January 5, 2004, Edward Jones and Decker filed a joint motion to compel arbitration of Ventura's claims. They asserted that when Dutton, acting on behalf of Ventura, opened the investment account at Edward Jones, she entered into a document entitled "Customer Account Agreements for Full Service and Customer Loan Accounts," which contained a predispute arbitration agreement. That arbitration agreement provided, in part:
 "Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me . . . shall be settled by arbitration. . . ."
In support of their motion to compel arbitration, Edward Jones and Decker submitted a copy of the customer-account agreement containing the arbitration provision, a copy of the signature page showing that Dutton had signed the customer-account agreement, and an affidavit by Glenda Busken, the custodian of records for Edward Jones.
On February 3, 2004, Morgan Stanley and Bowen filed a joint motion to compel arbitration. They asserted that Dutton signed a binding, predispute arbitration *Page 1039 
agreement when, acting on behalf of Ventura, she opened her "active assets" investment account with Morgan Stanley and signed a "Dean Witter Client Agreement." That agreement provided, in part:
 "You agree that all controversies between you or your principals or agents and [Morgan Stanley] or its agents (including affiliated corporations) arising out of or concerning any of your accounts, orders or transactions, or the construction, performance, or breach of this or any other agreement between us, whether entered into before or after the date an account is opened, shall be determined by arbitration. . . ."
In support of their motion, Morgan Stanley and Bowen submitted a copy of the "Active Assets Account Application," a copy of the "Dean Witter Client Agreement," and a copy of the probate court's order granting Dutton's petition for guardianship and conservatorship.
Ventura filed a lengthy response to the motions to compel arbitration. He asserted that the brokerage defendants had failed to establish the existence of a valid and binding contract containing an arbitration provision; he challenged the completeness of the account applications submitted by the brokerage defendants as exhibits; he also challenged the extent of the verification process used by the brokerage defendants in verifying Dutton's power to invest the assets of the trust estate. Ventura, relying on NationsBanc Investments, Inc. v.Paramore, 736 So.2d 589 (Ala. 1999), argued that the purported investment agreements were void because Dutton, as conservator of his estate, lacked the capacity or authority to enter into the investment agreements with the brokerage defendants.
In further support of their motion to compel arbitration, Morgan Stanley and Bowen submitted the affidavit of Gwendolyn Taylor. Taylor attested, among other things, that if an account application is completed on someone's behalf by a guardian, Morgan Stanley requires a copy of the court order appointing the guardian. Taylor stated that in connection with Dutton's application, it was not necessary to complete the section of the application relating to trust accounts, because Dutton's application related to a guardianship account. Taylor attested that, under the policies then in effect at Morgan Stanley, the application, the new account form, and the court order appointing Dutton as guardian for Ventura's trust estate constituted the appropriate documentation to open a guardianship account.
Additionally, in their brief supporting their motion to compel arbitration, Morgan Stanley and Bowen addressed Dutton's authority to open the brokerage account. Morgan Stanley and Bowen recognized that "§ 26-2A-152, Ala. Code, empowers conservators to `invest and reinvest funds of the estate as would a trustee'" and that "a trustee's power to invest funds is defined generally in Alabama Code, § 19-3-120 through § 19-3-132." Morgan Stanley and Bowen then argued, without providing any citation to caselaw or to expert testimony, that "Mrs. Dutton did not violate the powers granted guardians and conservators. The eligible investments specified in the foregoing statute may be pursued via a [Morgan Stanley] account."
Edward Jones and Decker also filed supplemental materials in support of their motion to compel arbitration. They submitted Decker's affidavit, in which he attested that he met with Dutton, that she informed him that she wanted to invest funds belonging to her minor son, and that she would be the custodian of those funds because her son was a minor. Decker denied that Dutton ever indicated that she held the money through a conservatorship *Page 1040 
or that she was the conservator of Ventura's estate.
All of the brokerage defendants argue that Ventura's claims were arbitrable. They argue that Dutton had the authority to contract on behalf of Ventura and that she had the authority to make investments on his behalf. In entering into the investment agreements with Edward Jones and Morgan Stanley, Dutton agreed to arbitrate any disputes; the brokerage defendants argue that the court should enforce those arbitration agreements. They assert that in deciding whether to enforce the arbitration agreements, the court need not determine whether Dutton had the authority to make the particular investments she made pursuant to the investment agreements.
On July 8, 2004, the Marshall Circuit Court denied the brokerage defendants' motions to compel arbitration. The trial court held that the brokerage defendants had failed to establish that Dutton had the authority to bind Ventura to the investment agreements. Therefore, the trial court concluded that no binding contract had been established and that, as a result, the Federal Arbitration Act was not applicable and no preference in favor of arbitration existed.
The brokerage defendants separately appeal, arguing that the trial court erred in denying their motions to compel arbitration.
 Standard of Review "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. `After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)."
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted).
 Analysis
The threshold issue in this case is whether the court or the arbitrator resolves a challenge to a contract containing an arbitration agreement. This Court has recognized that a party who contests the existence of a contract containing an arbitration provision cannot be compelled to arbitrate that threshold issue because an arbitrator derives his authority solely from the parties' agreement. Only a court can resolve the question whether a contract exists. NationsBanc Invs., Inc. v. Paramore,736 So.2d at 593 (quoting Shearson Lehman Bros. v. Crisp,646 So.2d 613, 616-17 (Ala. 1994), and citing Three Valleys Mun. WaterDist. v. E.F. Hutton Co., 925 F.2d 1136, 1140 (9th Cir. 1991)).
We note that Edward Jones and Morgan Stanley both argue that Dutton entered into, and thereby agreed to, the investment agreements and to the arbitration provisions contained in those agreements. However, Ventura challenged Dutton's authority as his conservator to enter into the investment agreements with Edward Jones and Morgan Stanley. Thus, Ventura argued that Dutton lacked the authority to enter into those agreements on his behalf. This issue was therefore for the trial *Page 1041 
court, rather than the arbitrator, to resolve. However, we now review de novo the trial court's decision that Ventura is not bound by the arbitration provisions contained in the investment agreements.
Dutton was acting as a conservator of Ventura's trust estate and, thus, as a fiduciary on behalf of Ventura, when she entered into the investment agreements. The letters of guardianship and conservatorship conferred upon Dutton the duties and powers found in § 26-2A-152, Ala. Code 1975. In pertinent part, that section provides:
 "(a) Subject to limitation provided in Section 26-2A-154, a conservator shall have all of the powers conferred in this section and any additional powers now or hereafter conferred by law on trustees in this state. In addition, a conservator of the estate of an unmarried minor as to whom no one has parental rights, has the powers of a guardian described in Section 26-2A-78 until the minor attains the age of 19 years, or the disabilities of nonage have been removed, but the parental rights so conferred on a conservator do not preclude appointment of a guardian as provided in division 1 of this article.
 "(b) A conservator without court authorization or confirmation may invest and reinvest funds of the estate as would a trustee."
Under § 26-2A-152, Dutton was granted the same powers of investment as those granted a trustee. The Comment to §26-2A-152(b), Ala. Code 1975, refers the reader to § 19-3-120
through § 19-3-132, Ala. Code 1975, for a list of the powers of investment granted to a trustee. Based upon the language of those statutes, we conclude that Dutton, acting as Ventura's conservator, had the authority to enter into the investment agreements on Ventura's behalf.
We acknowledge that Dutton's authority to invest the moneys in the trust estate was limited by a court order appointing her guardian and conservator of the trust estate, which referenced §26-2A-152. Dutton had the authority to make only certain types of investments. However, in order to determine the validity of the investment agreements at issue here, for the purposes of reviewing the trial court's ruling on the motions to compel arbitration, we need not analyze each and every investment allowable under the investment agreements.
As the brokerage defendants argue, Dutton had the authority to enter into investment agreements on Ventura's behalf, and, in doing so, she agreed to arbitrate any disputes arising out of those agreements. Assuming Ventura's claims are encompassed within the language of the arbitration provisions contained in those investment agreements, this Court's analysis need go no further.[4]
We next address whether Ventura's claims are encompassed within the scope of the arbitration provisions. The arbitration clause contained in the Morgan Stanley client agreement provided, in pertinent part:
 "You agree that all controversies between you or your principals or agents and Dean Witter or its agents (including affiliated corporations) arising out of or concerning any of your accounts, orders or transactions, or the construction, performance, or breach of this or any other agreement between us, whether entered into before or after the date an account *Page 1042 
is opened, shall be determined by arbitration. . . ."
The arbitration provision contained in the Edward Jones customer-account agreement provided, in pertinent part:
 "Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me . . . shall be settled by arbitration. . . ."
This Court, in Georgia Power Co. v. Partin, 727 So.2d 2, 5-6
(Ala. 1998), stated that "[i]n order for a dispute to be characterized as arising out of the subject matter of a contract, for the purposes of arbitration, it must at the very least raise some issue that cannot be resolved without reference to, or a construction of, the contract itself."
In this case, Ventura seeks to recover from the brokerage defendants for breach of a fiduciary duty, fraud, and suppression. Ventura claims that the brokerage defendants breached a fiduciary duty they owed him arising out of their "direct knowledge that the funds [invested by Dutton] were part of a trust estate." He also seeks to recover for fraud and suppression because, he argues, the brokerage defendants "induced [Dutton] to place funds [in the investment accounts] by making false statements and promises with regard to their knowledge of the trust nature of the funds and their knowledge of the requirements of the law with regard to investing the subject funds."
Ventura must rely on or refer to the investment agreements to establish his breach-of-fiduciary-duty, fraud, and suppression claims. Therefore, his claims arise out of the investment agreements for purposes of the motions to compel arbitration, and the language of the arbitration provisions is broad enough to encompass Ventura's claims.
Next, we address Ventura's status as a nonsignatory to the arbitration agreements. Generally, "a nonsignatory to an arbitration agreement cannot be forced to arbitrate [his] claims." Cook's Pest Control, Inc. v. Boykin, 807 So.2d 524,526 (Ala. 2001). However, this Court has enforced arbitration provisions against nonsignatories under either a third-party-beneficiary theory or an intertwined-claims theory. Against the brokerage defendants, Ventura asserts a breach of fiduciary duties (allegedly arising under a conservator ininvitum theory), and fraudulent conduct and/or suppression. Because Ventura is a third-party beneficiary of the accounts and because his claims arise out of the manner in which the investment accounts were managed or should have been managed, he is seeking the benefits of the investment agreements entered into by Dutton.
If a nonsignatory to a contract containing an arbitration provision has obtained or seeks to obtain the benefit of the contract, the nonsignatory may not avoid the application of the arbitration provision. See Wolff Motor Co. v. White,869 So.2d 1129 (Ala. 2003); Equifirst Corp. v. Ware, 808 So.2d 1, 5 (Ala. 2001) ("This Court has enforced an arbitration provision against a nonsignatory plaintiff when that nonsignatory plaintiff claimed the benefit of the contract containing the arbitration provision but attempted to avoid the application of the arbitration provision.").
Finally, Ventura seeks to assert a cause of action against the brokerage defendants pursuant to the common-law theory of trusteein invitum as applied to conservators. See Belcher v.Birmingham Trust Nat'l Bank, 348 F.Supp. 61 (N.D.Ala. 1968). However, because Ventura *Page 1043 
is subject to the arbitration provisions contained in the brokerage contracts, we express no opinion on this issue. That is an issue for the arbitrator to resolve.
For these reasons, we reverse the trial court's order denying the motion to compel arbitration filed by Edward Jones and Decker. We also reverse the trial court's order denying the motion to compel arbitration filed by Morgan Stanley and Bowen. We remand this case for the entry of an order consistent with this opinion.
1031752 — REVERSED AND REMANDED.
1031767 — REVERSED AND REMANDED.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, and SMITH, JJ., concur.
PARKER, J., dissents.
BOLIN, J., recuses himself.
[1] The amount of this bond was insufficient in light of the amount of the bond ordered by the probate court.
[2] Hartford filed a motion seeking relief from this order. As grounds for that relief, Hartford argued that the probate court lacked jurisdiction or authority to set aside the July 2002 order of final settlement. Hartford also argued that the probate court had erred by entering a judgment against the conservator because Hartford had not had an adequate opportunity to challenge the accounting to be charged against the conservator. The probate court denied Hartford's motion on December 8, 2003, by a separate order. In its December 8, 2003, order, the probate court rejected Hartford's jurisdictional argument and noted that Hartford had received notice of the August 2003 hearing but had elected not to participate in that hearing and further noted that evidence had been presented at that hearing establishing Dutton's misfeasance and malfeasance and thus her liability to the estate.
Hartford then filed with the circuit court a petition for a writ of mandamus, seeking relief from the final order. As grounds for that petition, Hartford asserted that the probate court lacked jurisdiction to enter the October 14, 2003, order because, it argued, the probate court lacked jurisdiction to set aside its previous order of July 2002. The record does not disclose the outcome of this petition.
[3] Ventura also named as defendants Hartford and Billie B. Line, Jr.
[4] The parties do not contest the validity of Dutton's signature on the investment agreements, and there is no dispute that the contracts affect interstate commerce.