UBS Financial Services, Inc. ("UBS"), the defendant below, appeals from the trial court's denial of its motion to compel Joyce Faye Johnson, the plaintiff below, to arbitrate her claims against UBS.
 Facts
On March 7, 2000, Johnny Johnson opened an account with UBS; the stockbroker who helped Johnny open the account was Charles Owens, a stockbroker employed by UBS in Georgia. Johnny and Owens executed a Customer Account Agreement ("the agreement"). Immediately above the signature line on which Johnny's signature appears is the following language:
 "I/We have read, understand, and agree to abide by the terms and conditions of this customer agreement set forth herein and/or attached hereto. This agreement contains a Predispute Arbitration Clause."
(Bold type in original.) The arbitration clause provides:
 "I agree, and by carrying an account for me, [UBS[1]] agrees, that all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration."
Johnny also checked a box on the agreement next to language reading: "Yes, I want this to be a margin account and have received a copy of the Credit Charge Summary."
Johnny's sister, Joyce Faye Johnson, is a resident of Etowah County. In 1994, she retired after 34 years of employment with various Bell telephone companies. *Page 120 
Upon her retirement, Joyce received a lump-sum payout of benefits that she was required to roll into an individual retirement account ("IRA").
Joyce alleges that on December 11, 2000, Owens contacted her by telephone. She contends that Owens represented to her that, by investing funds with him, she could make a sizeable sum of money. Joyce informed Owens that she could not trade with him because all of her investment money was in her IRA. She states in her complaint: "Owens represented that he could conduct said trading of [Joyce's] IRA holdings through [Johnny's] account on margin." Joyce further asserts in her complaint that, "based upon the representations of Owens, on behalf of [UBS], [Joyce] invested large sums of money with [UBS] as Owens suggested, and such was placed by Owens through the account of [Joyce's] brother with [UBS]." Joyce alleges that Owens represented to her that purchasing securities on margin with funds in her IRA was legal under the applicable regulations imposed upon broker-dealers such as Owens. Joyce contends, however, that Owens was aware at all times that purchasing securities on margin with IRA-account funds was illegal.
Joyce further alleges that on December 13, 2000, Owens again contacted her by telephone. Owens told her that "he had checked with [Johnny] and that it was approved by [Johnny] that [Joyce] invest more IRA holdings in another security known as EMC, and that such would be handled the same way — through [Johnny's] account." Joyce alleges that, contrary to his assertions, Owens had not obtained Johnny's authorization to invest her funds through his account, but that, based on Owens's representations, she gave Owens additional money to invest on her behalf.
Joyce contends that she learned in October 2002 that her brother had not authorized the transactions Owens was conducting and that trading on margin with IRA-account funds violated both the law and applicable securities industry regulations.
In September 2004, Joyce sued UBS in the Etowah Circuit Court under a respondeat superior theory for Owens's acts.[2] Joyce alleged fraud, misrepresentation, deceit, and conversion based on her transactions with Owens. She claimed that, based on Owens's allegedly false representations, she invested large sums of money in securities on margin through her brother's account and that those investments were unsuitable and illegal and that they were unauthorized by Johnny. She further alleged that allowing her to trade on margin on her brother's account was an illegal and unauthorized approach to investing and that Owens, and vicariously UBS, were aware that this practice violated the law and applicable investment regulations. She demanded relief in the amount of $59,354 as compensatory damages for the funds she lost through Owens's investments and an unspecified amount for mental anguish and as punitive damages.
On October 13, 2004, UBS removed the action to federal court on the basis of diversity jurisdiction. The federal court remanded the case to the Etowah Circuit Court after Joyce amended her complaint to permanently and irrevocably limit her damages to less than $75,000, the statutory minimum for finding diversity jurisdiction. UBS moved the trial court to compel arbitration and for a stay pending arbitration. The trial court denied UBS's motion. UBS appeals.
 Standard of Review
"`"[T]he standard of review of a trial court's ruling on a motion to compel *Page 121 
arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review."'" Blue Cross BlueShield of Alabama v. Rigas, 923 So.2d 1077, 1083
(Ala. 2005) (quoting Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999)). No disputed ore tenus evidence has been presented in this proceeding; therefore, we review de novo the trial court's denial of UBS's motion to compel arbitration.
 Analysis
UBS, in moving to compel arbitration, "`"has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce."'"Rigas, 923 So.2d at 1083 (quoting Fleetwood Enters., Inc. v. Bruno,784 So.2d 277, 280 (Ala. 2000), quoting in turn TranSouth Fin. Corp.v. Bell, 739 So.2d 1110, 1114 (Ala. 1999)); see alsoVann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53
(Ala. 2002). We hold that UBS did not meet its burden of proving the existence of a contract calling for arbitration; thus, the trial court did not err in denying UBS's motion to compel arbitration.[3]
Joyce argues that there is no contract between UBS and her that calls for arbitration. She contends that although her brother Johnny is a signatory to the agreement, she is not. Therefore, she argues, to the extent that any contract governing Johnny's UBS account contains an arbitration clause, that arbitration clause cannot bind her as a nonsignatory. UBS contends that, although Joyce is not a signatory to the agreement, she is nevertheless bound by its arbitration provision because, UBS asserts, she is a third-party beneficiary of the agreement. We disagree.
This Court has explained that in construing the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"),
 "[b]oth federal and state courts have consistently held that the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration any dispute that he did not agree to submit. The language of the contract entered into by the parties determines whether a particular dispute should be submitted to arbitration. . . ."
Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268,1270 (Ala. 1997) (citations omitted). Accord SouthernEnergy Homes, Inc. v. Ard, 772 So.2d 1131, 1133-34 (Ala. 2000); Ex parte Stamey, 776 So.2d 85 (Ala. 2000), citing First Options of Chicago, Inc. v. Kaplan,514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); Ex parteStallings Sons, Inc., 670 So.2d 861, 862 (Ala. 1995); and AT T Techs., Inc. v. Communications Workers ofAmerica, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648
(1986). Because the duty to arbitrate is a contractual duty, "parties cannot be required to arbitrate unless they have agreed to arbitrate." Ard, 772 So.2d at 1134. The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Scis., Inc. v. Board of Trs. of LelandStanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248,103 L.Ed.2d 488 (1989). Thus, in determining whether to compel a party to arbitrate, we must determine as an initial matter whether the parties agreed to arbitrate. *Page 122 
The only arbitration clause in this case is contained in the agreement, a contract entered into by UBS and Johnny. It is undisputed that Joyce was not a signatory to the agreement. Generally, a nonsignatory to an arbitration agreement cannot be compelled to arbitrate his or her claims.Cook's Pest Control, Inc. v. Boykin, 807 So.2d 524, 526
(Ala. 2001) ("It is the general rule that a nonsignatory to an arbitration agreement cannot be forced to arbitrate her claims." (citing Ex parteStripling, 694 So.2d 1281 (Ala. 1997), and Thomson-CSF, S.A.v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir.1995))); see also Ard,772 So.2d at 1134 ("we recognize that parties cannot be required to arbitrate unless they have agreed to arbitrate"). UBS argues that even though Joyce is not a signatory to the agreement, she is nevertheless bound by its arbitration provision because, it says, she is a third-party beneficiary of the agreement. Joyce denies that she is a third-party beneficiary of the agreement, and she argues that she does not assert any claims against UBS as a third-party beneficiary. We agree that Joyce is not a third-party beneficiary of the agreement; thus, the general rule that nonsignatories to an arbitration provision cannot be compelled to arbitrate their claims applies. See Cook's Pest Control,807 So.2d at 526.
This Court has held that a nonsignatory can be bound by an arbitration provision when the nonsignatory is an intended third-party beneficiary of the contract containing the arbitration provision. See Edward D,Jones Co. v. Ventura, 907 So.2d 1035 (Ala. 2005), and Ex parte Dyess, 709 So.2d 447 (Ala. 1997). "[I]n order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties." Locke v. Ozark City Bd. of Educ., 910 So.2d 1247,1251 (Ala. 2005) (citing H.R.H. Metals, Inc. v.Miller, 833 So.2d 18, 24
(Ala. 2002)); see also Ex parte Stamey, supra (holding that the intent of the parties as expressed in the contract determines whether a nonsignatory is a third-party beneficiary). UBS does not argue or provide facts that would support an argument that UBS or Johnny intended to bestow a direct benefit upon Joyce when they executed the agreement. There is thus no indication that UBS or Johnny intended to bestow benefits on Joyce as a third-party beneficiary. Absent a showing that UBS and Johnny intended to benefit Joyce when they executed the agreement on opening Johnny's account, Joyce cannot be considered a third-party beneficiary. See Locke,910 So.2d at 1251. Therefore, Joyce is not bound by the arbitration provision of the agreement between UBS and Johnny.
UBS argues that Ventura and Dyess support its argument that the trial court erred in denying its motion to compel arbitration because Joyce was a third-party beneficiary of the agreement. However, unlike Joyce, who is not an intended third-party beneficiary, bothVentura and Dyess involve contracting parties that intended to provide third-party benefits to the party seeking to avoid arbritration. Ventura's mother was granted conservatorship of Ventura's trust estate and opened investment accounts using funds in Ventura's trust naming herself as a "custodian." Ventura, as the owner of the trust, was clearly a third-party beneficiary of the investment agreements executed between his mother, acting as the conservator of his trust estate, and the investment brokerages investing the funds in his trust. 907 So.2d at 1040-42. Similarly, Elton Dyess was test-driving a car for sale at Jack Ingram Motors, a Montgomery automobile dealership, when he was involved in a car accident. We held that the policy between the defendant insurer and Jack Ingram *Page 123 
Motors "was written with the intent of directly benefiting people such as Dyess, who was injured while test-driving an automobile belonging to Jack Ingram Motors." Dyess, 709 So.2d at 450-51. There is, however, no evidence to indicate that when UBS and Johnny executed the agreement, either intended to bestow on Joyce any benefits under the agreement. Therefore, Ventura and Dyess are of no avail to UBS.
Finally, UBS contends that even if Joyce was not an intended third-party beneficiary of the agreement, she became one when she benefited from use of the account. However, the mere fact that one obtains tangential benefits from a contract does not subject one to an arbitration provision in that contract. See EquifirstCorp. v. Ware, 808 So.2d 1, 5
(Ala. 2001) (holding that a nonsignatory to the mortgage agreement on a mobile home could not be bound by the arbitration provision in the mortgage agreement simply because she lived in the mobile home).
 Conclusion
UBS has not proven the existence of a valid contract expressly calling for arbitration of Joyce's claims against it; neither has it been shown that Joyce was a third-party beneficiary of the agreement between UBS and Johnny. UBS did not meet its burden in moving to compel arbitration; thus, we affirm the trial court's order denying UBS's motion to compel arbitration.
AFFIRMED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ , concur.
[1] The agreement actually refers to J.C. Brad-SEE, Justice. ford Co., the predecessor of UBS.
[2] At all times he was investing Joyce's money, Owens was an employee of UBS.
[3] Because UBS fails to prove the existence of a contract calling for arbitration, we pretermit discussion of whether the transaction at issue affects interstate commerce. SeeRigas, 923 So.2d at 1083.