Wesley Locke appeals from a summary judgment in favor of the defendant, the Ozark City Board of Education. We reverse and remand.
 I.
Wesley Locke is a physical education teacher employed by the Dale County Department of Education. For a number of years, Locke also served as an umpire for high school baseball games. Locke was a member of the Southeast Alabama Umpires Association ("SAUA"), which provides officials to athletic events sponsored by the Alabama High School Athletic Association ("AHSAA").
On March 30, 1999, Locke was serving as the head umpire in a baseball game between Carroll High School and George W. Long High School. The game was *Page 1249 
being played at Carroll High School, and the principal and the athletic director of Carroll High School were in attendance; however, Carroll High School did not provide police protection or other security personnel for the game. After the baseball game, Mixon Cook, the parent of one of the baseball players for Carroll High School, attacked Locke, punching him three times in the face — in his right eye, on the right side of his face, and on the left side of his neck. As a result, Locke sustained physical injuries to his neck and face that caused him pain, discomfort, scarring, and blurred vision. Locke sued the Ozark City Board of Education ("the Board")[1] alleging breach of contract.[2]
Locke specifically alleged that because Carroll High School, through the Board, is a member of the AHSAA, it is therefore required to follow the rules and regulations of the AHSAA. According to Locke, the AHSAA Directory provides that all school principals have the duty to "insure good game administration and supervision by providing for the following: . . . adequate police protection" at athletic events. Locke alleged that, by not fulfilling its duty under the Directory, the Board breached its contract with the AHSAA by failing to provide police protection at the baseball game, that he was an intended third-party beneficiary of the contract, and that he was injured as a result of the Board's breach of the contract.
The Board moved for a summary judgment, arguing that it did not have a duty to protect Locke, that Locke was not an intended third-party beneficiary of the contract between it and AHSAA, that Locke's claims were tort claims and not contract claims, that the Board is not responsible for the criminal actions of a third party, and that the Board did not breach "any alleged contract" with AHSAA. The trial court entered a summary judgment in favor of the Board. Locke appeals.
 II.
The standard for review of a summary judgment is well established:
 "The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990). ". . . Ala. Code 1975 § 12-21-12, mandates that the [nonmovants] meet their burden by `substantial evidence.' Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test the nonmovant must present `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Brewer v. Woodall, 608 So.2d 370, 372 (Ala. 1992).
 III.
For the purposes of this appeal, we assume that the AHSAA Directory constitutes *Page 1250 
a valid contract between the Board and AHSAA.[3]
On appeal, Locke first argues that he is an intended third-party beneficiary of a contract between the Board and the AHSAA. "[I]f one person makes a promise for the benefit of a third party, such beneficiary may maintain an action thereon, though the consideration does not move from the latter."Franklin Fire Ins. Co. v. Howard, 230 Ala. 666, 667-68,162 So. 683, 684 (1935).
 "`"To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached."'"
H.R.H. Metals, Inc. v. Miller, 833 So.2d 18, 24 (Ala. 2002) (quoting Sheetz, Aiken Aiken, Inc. v. Spann, Hall, Ritchie,Inc., 512 So.2d 99, 101-02 (Ala. 1987)). Further, "`"[i]t has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to incidental, benefit."'" Morris Concrete, Inc. v. Warrick, 868 So.2d 429,434 (Ala.Civ.App. 2003) (quoting McGowan v. Chrysler Corp.,631 So.2d 842, 848 (Ala. 1993) (quoting in turn Mills v. Welk,470 So.2d 1226, 1228 (Ala. 1985))). "[W]e look to the complaints and the surrounding circumstances of the parties to ascertain the existence of that direct benefit." Holley v. St. Paul Fire Marine Ins. Co., 396 So.2d 75, 80 (Ala. 1981) (citing Zeiglerv. Blount Bros. Constr. Co., 364 So.2d 1163 (Ala. 1978)); seealso Anderson v. Howard Hall Co., 278 Ala. 491, 179 So.2d 71
(1965).
In Zeigler, this Court addressed what is necessary to establish status as a third-party beneficiary of a contract.364 So.2d at 1163. In that case, a dam commissioned by a power company and built by a contractor collapsed. 364 So.2d at 1165. Zeigler, a customer of the electrical power company, sued the contractor that had built the dam, arguing that his status as a consumer of electrical power made him a third-party beneficiary of the contract between the electrical power company and the contractor. Id. Specifically, Zeigler argued that because the contractor failed to construct the dam properly and the dam subsequently collapsed, he was being forced to pay higher bills for electricity than he would have had to pay had the dam been properly constructed. Id.
In determining whether Zeigler was a third-party beneficiary of the contract under the "surrounding circumstances" test, this Court looked to whether the power company itself was directly benefited by the contract, or whether the benefit manifested *Page 1251 
itself mainly to third parties. Zeigler, 364 So.2d at 1166. This Court noted that the contract itself did not mention third parties or any benefits third parties would reap from the construction of the dam. Id. This Court found that "[p]erformance of the contracts would, and did, result in an enhancement of [the power company's] real and riparian property holdings, to the direct benefit of the [power company] itself."364 So.2d at 1166. This Court further noted that there was no evidence indicating that the power company had considered the fees their customers would have to pay if the dam was built, and that there was no evidence indicating that a properly constructed dam would have necessarily resulted in lower electrical bills for the consumer. Zeigler, 364 So.2d at 1166. Therefore, this Court held that because the contract directly benefited the power company and would not necessarily benefit the customer, Zeigler was an incidental, rather than an intended direct, beneficiary of the contract between the power company and the contractor. Id.
On the other hand, in H.R.H. Metals, Inc., Vulcan Materials Company contracted with H.R.H. Metals, Inc., to purchase and remove three buildings located on property belonging to Vulcan.833 So.2d at 21. H.R.H. signed a contract with Vulcan that provided, in pertinent part:
 "[H.R.H.] covenants to follow Vulcan's safety rules and to maintain its own safety and health program for its employees, subcontractors, and agents sufficient to prevent injury or illness to such persons resulting from their presence on the Vulcan premises. . . ."
H.R.H. Metals, Inc., 833 So.2d at 21. H.R.H. hired a subcontractor, Carl Miller, to demolish and remove one of the buildings. Id. at 22. While in the process of demolishing the building, Miller walked across a skylight and fell 20 feet, seriously injuring himself. Id. Miller sued H.R.H., alleging, among other things, that H.R.H. had breached its contract with Vulcan to provide safety equipment to subcontractors, that he was a third-party beneficiary of the contract between Vulcan and H.R.H., that H.R.H. had breached that contract, and that he had been injured by H.R.H.'s breach of the contract.
On appeal, this Court noted that in order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties. H.R.H.Metals, Inc., 833 So.2d at 24. This Court held that to ascertain the intent of the parties "we must first look to the contract itself, because while `[t]he intention of the parties controls in construing a written contract,' `the intention of the parties is to be derived from the contract itself where the language is plain and unambiguous.'" H.R.H. Metals, Inc., 833 So.2d at 24
(quoting Loerch v. National Bank of Commerce of Birmingham,624 So.2d 552, 553 (Ala. 1993)). We then noted that the contract between H.R.H. and Vulcan specifically provided that H.R.H. was to "maintain its own safety and health program for its employees, subcontractors, and agents sufficient to prevent injury orillness to such persons resulting from their presence on theVulcan premises." 833 So.2d at 25. This Court held that "the emphasized language reflects an intention on the part of the contracting parties to bestow a direct benefit on [the plaintiff]. . . ." 833 So.2d at 25.
In this case, the Board argues that "Locke was not an intended beneficiary of the AHSAA contract." The Board relies on Gardnerv. Vinson Guard Service, Inc., 538 So.2d 13 (Ala. 1988), in which a corporation hired a security company to provide protection in the corporation's parking lot to its employees as they were arriving at *Page 1252 
and leaving work. 518 So.2d at 13. The instructions to the security guards specified certain times and places female employees would be arriving at work, and provided that the security guards were to escort them into the building. Id. at 14. The security guards were also to perform security checks around the perimeter of the company's property at certain intervals. Id. However, the contract also provided that, "Guards will use bathroom facilities in [the company's] building, but will not visit or linger in the building for any extended period of time." Gardner, 538 So.2d at 14.
One morning, when a group of female employees, including the plaintiff, arrived for work, a security guard met them at the door and told them that "he had interrupted someone trying to break into the cigarette machine and that there was no need to call the police because the man had left and he (the security guard) had recovered all of the merchandise." 538 So.2d at 14. The security guard further informed the female employees that he had apprehended the man and that they could safely enter the building to start work. Id. A short time later, a female employee, Hazel Gardner, entered a bathroom in the building where she was attacked by a second man who had apparently broken into the building. Id. Gardner and her husband sued the security company, alleging, among other things, breach of contract. Gardner argued that she was a third-party beneficiary of the contract between the security company and her employer.Gardner, 538 So.2d at 14. The company moved for a summary judgment, and the trial court granted that motion.
On appeal, this Court upheld the summary judgment for the security company. However, it was not, as the Board contends, because this Court found that Gardner was not an intended third-party beneficiary. This Court stated that "[i]n their brief, the Gardners argue that a cause of action may exist for a third-party beneficiary for a breach of contract. We do not dispute that a cause of action may exist, but we can find no contractual duty imposed upon [the security company]." Gardner,538 So.2d at 15. Thus, in Gardner this Court held that the security guards did not have a contractual duty to protect Gardner inside the building; it did not hold that Gardner was not a third-party beneficiary.[4]
The Board also cites DuPont v. Yellow Cab Co. of Birmingham,565 So.2d 190 (Ala. 1990), in support of its argument that Locke is not an intended third-party beneficiary of the contract between the Board and AHSAA. In DuPont, a school board contracted with a cab company to provide drivers and maintenance for school buses. 565 So.2d at 192. The cab company subcontracted with another company to provide drivers for the buses. Id. One of the buses was not maintained properly, and the driver was injured when the brakes failed, causing the bus to collide with a tree. Id. at 191. The driver sued the cab company, alleging that he was a third-party beneficiary of the contract between the school board and the cab company. Id. The trial court found that the driver was not a third-party beneficiary of the contract and entered a summary judgment for the cab company. *Page 1253 
This Court stated that the cab company "was under an obligation, independent of the contract, to maintain its fleet of vehicles for the safety of its drivers." DuPont,565 So.2d at 192 (citing § 25-1-1, Ala. Code 1975). The contract at issue inDuPont provided solely for the transportation of students to and from school; therefore, the only group that could benefit from the contract was the students. 565 So.2d at 192. We held, therefore, that the only "reasonable inference" that could be drawn from the contract was that the children riding the school buses, not the drivers, were the intended direct beneficiaries of the contract, and we affirmed. DuPont, 565 So.2d at 192.
In this case, the contract between the Board and the AHSAA specifically provides that principals are to "provide good game administration and supervision by providing . . . adequate police protection." Therefore, we must determine from the surrounding circumstances whether Locke is an intended direct beneficiary.
The contract before us between the Board and the AHSAA, like the one in H.R.H. and unlike the one in Zeigler, anticipates the existence of a third party. SAUA, which provided umpires, specifically Locke, for the game, provides officials only to athletic events that are sponsored by the AHSAA. The contract states that the purpose of "adequate police protection" is to "provide good game administration and supervision." Game administration and supervision necessarily involve umpires.[5] The fact that the AHSAA and the Board intended for the police protection to directly benefit the umpires, who are involved in game administration and supervision, is evidenced by the letter from the AHSAA sanctioning Carroll High School for the incident involving Locke. The AHSAA stated:
 "According to information received . . . there were administrators present at the baseball game from both schools but there was no police protection provided. . . . At the conclusion of the game, Mr. Mixon Cook made his way to the area where the umpires were exiting the field. Mr. Wesley Locke, Jr., the umpire in chief was struck three times in the face and neck area by Mr. Mixon Cook, a parent of a Carroll High School athlete. Mr. Cook used his fist with striking blows to Mr. Locke's right eye, left neck area and right side of his face. Because of this physical attack by Mr. Mixon Cook on the game official, Mr. Wesley Locke, Jr., Carroll High School is assessed a monetary fine of $1,000.00 and placed on probation for a period of one year."[6]
Because this matter is before us on the appeal of a summary judgment, we need determine only whether Locke, as the nonmovant, has presented substantial evidence creating a genuine issue of material fact as to whether he was an intended direct beneficiary of the contract. We hold, based on the plain language of the contract and on the surrounding circumstances, that the contract anticipates third-party umpires, that the contract was intended to directly benefit umpires like Locke, and that Locke has presented substantial *Page 1254 
evidence creating a genuine issue of fact as to whether he was an intended direct beneficiary of the contract between the Board and the AHSAA.
 IV.
The Board next argues that Locke's allegations sound in tort rather than in contract. Locke argues that his claim sounds in contract because, he says, the Board had a contractual duty to provide police protection at the baseball game Locke was umpiring, the Board failed to do so, and as a result Locke was assaulted by a spectator. Locke relies on Sims v. Etowah CountyBoard of Education, 337 So.2d 1310, 1313 (Ala. 1976), in which this Court stated: "`It will be observed that a negligentfailure to perform a contract express or implied . . . is but a breach of the contract.'" (quoting Berry v. Druid City Hosp.Bd., 333 So.2d 796, 799 (Ala. 1976) (quoting in turn Vines v.Crescent Transit Co., 264 Ala. 114, 119, 85 So.2d 436, 440
(1955))). On the other hand, it is true that
 "if in performing [the contract], it is alleged that the defendant negligently caused personal injury or property damage to plaintiff, the remedy is in tort, for it is not the breach of a contract express or implied, but the breach of an implied duty to exercise due care not to injure plaintiff or her property which is the gravamen of the action."
Vines, 264 Ala. at 119, 85 So.2d at 440.
Cook testified that if police protection had been provided, he would not have attacked Locke. Therefore, viewing the record in a light most favorable to Locke, the nonmovant, we conclude that he has presented substantial evidence showing that the Board failed to perform its contractual duties and that as a result of the Board's breach of the contract Locke was harmed. Locke's complaint sounds in contract, not in tort.
 V.
The Board argues that "`[a]bsent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person.'" Steiger v. Huntsville CityBd. of Educ., 653 So.2d 975 (Ala. 1995) (quoting Young v.Huntsville Hosp., 595 So.2d 1386, 1387 (Ala. 1992)). While this is a correct statement of law, the principle applies to claims sounding in tort, not to those in contract. See Steiger,653 So.2d at 978 ("We have noted, `"It is difficult to impose liability on one person for an intentional criminal act committed by a third person."' In this case, the Board has no tort liability. The only liability it could have to plaintiff Steiger is through a contract theory.") (citations omitted). Locke has presented evidence indicating that one of the purposes of the contract was providing "good game administration and supervision. . . ." Viewed in a light most favorable to Locke, this evidence creates a question of material fact as to whether the Board had a contractual duty to protect Locke from the criminal acts of third parties at sporting events by providing adequate police protection.
 VI.
Finally, the Board argues that it did not breach the contract with the AHSAA. The Board concedes that the AHSAA Directory "provides that the school principal is required to insure good game administration and supervision by providing for adequate police protection." The Board, however, also offers testimony from Dan Washburn, the executive director of the AHSAA, to the effect that the AHSAA has recommended that "security at non-revenue games . . . be in the form of administrators. *Page 1255 
. . ." Nevertheless, "`[i]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation.'" Harbison v.Strickland, 900 So.2d 385, 391 (Ala. 2004) (quoting Kinmon v.J.P. King Auction Co., 290 Ala. 323, 325, 276 So.2d 569, 570
(1973)). The AHSAA Directory specifically provides that "adequate police protection" is to be provided at all athletic events sponsored by the AHSAA. Locke has offered undisputed evidence that there was no police protection at the baseball game at which he was injured and that the Board provided police protection at other athletic events. Further, a letter sent by the AHSAA to the Board, fining the Board for the incident involving Locke, specifically cites the fact that no police protection was provided at the baseball game. There is a genuine issue of material fact as to whether the Board provided "adequate" police protection at the baseball game at which Locke was injured under its contract with the AHSAA; therefore, a summary judgment is not appropriate as to this issue.
 VII.
Locke has presented substantial evidence indicating that the Board and the AHSAA intended to provide a direct benefit to umpires, that he was an intended direct beneficiary of the contract, and that the Board breached the contract. Locke's complaint sounds in contract, and the evidence, viewed in a light most favorable to Locke, presents a question of material fact as to whether the Board had a contractual duty to protect Locke from the criminal acts of third parties and whether the Board did in fact provide adequate police protection at the game. For these reasons, a summary judgment was not appropriate. Therefore, the summary judgment in favor of the Board is reversed, and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Carroll High School is under the administration of the Ozark City Board of Education.
[2] Locke also alleged negligence and wantonness. The trial court dismissed both of those claims, and Locke does not appeal that ruling.
[3] The Board does not argue that as a matter of law or of uncontested fact the AHSAA Directory is not a contract between it and the AHSAA. In its brief to this Court, the Board states only:
 "According to Dan Washburn, the Executive Director of the AHSAA, the AHSAA Directory is not the by-laws or constitution of the AHSAA, but rather suggestions for member schools to follow. (C. 108-109). Thus, it is questionable as to whether the AHSAA Directory is actually a contract. However, even assuming the AHSAA constitutes a contract between [the Board] and the AHSAA, Locke has not provided substantial evidence that he is an intended beneficiary of this contract."
 (The Board's brief, p. 11.) Because there apparently is a genuine issue of material fact as to whether the AHSAA Directory is a contract between the AHSAA and the Board, we do not review that question. This Court "will address on appeal only those issues presented and for which supporting authorities have been cited to the court." Messer v. Messer, 621 So.2d 1343, 1344 (Ala.Civ.App. 1993).
[4] The Board similarly cites Whitehead v. USA-One, Inc.,595 So.2d 867 (Ala. 1992); however, in Whitehead, as in Gardner, this Court concluded that the defendant did not have a contractual duty to perform the actions the plaintiff claimed it was obligated to perform. Whitehead, 595 So.2d at 867. Further, the contract at issue in Whitehead expressly stated that the benefits were to extend only to the two contracting parties.Id.
[5] The umpires contemplated by the contract benefit directly from the protection provided by the police officers. Mixon Cook testified:
 "Q. If there had been a uniformed police officer at that game, do you think you still would have attacked [Locke]?
 "A. Not if he was escorting him out, no.
 "Q. What if he was just there where he could keep an eye on things?
 "A. Well, yeah, it probably would have helped me keep my cool."
[6] Carroll High School did not appeal the sanctions imposed by the AHSAA.